Samuel 0. Golem ah, J.
Plaintiff, a certified public accountant, a former employee of the defendant accounting firm, retired upon reaching an age limit — 'Sues to establish his right to have his pension payments computed on a basis which would increase the pension from $3,351.32 a year to $12,513.24. The increase, if allowed, would follow from including in “ annual salary ” not only the fixed amount received by the plaintiff, but ‘ ‘ in addition thereto * * * as a commission a further distribution equivalent to ” a certain percentage of profits (contract of employment).
The plaintiff was in the defendant’s employ for many years — on a permanent basis since 1926. In October, 1942, his employ continued under a manager’s agreement at a fixed salary. He also received a bonus — but payment was voluntary, and the amount in the defendant’s discretion. In 1951 he entered into a “ Principal’s Agreement ” with the defendant. The designation “ Principal ” was a new one in the defendant’s enterprise; several employees became ‘ ‘ Principals ’ ’ about the same time. “A ‘Principal’”, the defendant says in its brief, “is an employee of defendant who has senior responsibility, working under partners, and whose compensation consists of a fixed salary and a so-called ‘ commission ’ or percentage of interest in defendant’s net profits.” Under this agreement the plaintiff’s fixed salary was $10,000 a year; his additional compensation, computed as I have recited above from the contract of employment was far in excess of that amount — $37,000 for each of the last three years of his employment, the years that would *864 be taken into account if additional compensation is a factor in determining pension.
Is the “ additional compensation ” a factor? The defendant’s pension plan which went into effect in 1933 called for no contributions by employees. An employee upon retirement would receive “ a pension equal to 1% of the average annual salary received for the last three years ”, multiplied by the number of years of service (1933 Welfare Plan).
The answer, it seems to me, is plain. What the plaintiff received was, as the defendant’s brief recognizes, his compensation for services — no matter how computed or how denominated; whether a fixed sum, a percentage of profits, or a combination of both; no matter why one method was adopted instead of another. Whatever the percentage should turn out to be, the sum received was the plaintiff’s, as much his salary as was the fixed amount, and to which he was entitled as of right. The defendant contends that its intention was to consider only the smaller fixed salary in computing the pension. But there is nothing in the language of the plan which should suggest that intention in this context — the fact that earlier bonuses, ex gratia, were not considered in determining pensions certainly is not of help in determining intention here, and in any ease, salary is the remuneration for services rendered. The additional percentage compensation could have been excluded by saying so, as the defendant undertook to do (in a 1955 plan not applicable to the plaintiff), but unless excluded explicitly, the ordinary connotation of ‘‘ salary ’ ’ should apply.
But, says the defendant, the pension plan was amended in 1944 and by the terms of the later plan, “ the annual salary received from the Firm by any beneficiary shall be deemed not to include any bonus or incentive compensation payments.” This was the plan in effect when the plaintiff’s “ Principal ” agreement was entered into in 1951 and, the defendant says, the plaintiff is bound by it. The 1944 “ plan ” was not an amendment of the 1933 plan. The 1944 “ plan ” (an amendment of a 1943 “plan”) was a funding agreement with a trust company, by which the pension plan was placed upon an actuarial basis and its administration entrusted to the trust company. Its preamble recites that the defendant has ‘ ‘ maintained a voluntary program of old age benefits for employees ” and that they desire “ to continue such program * * * and to create a pension trust to aid in providing such benefits.” And in informing their employees of the creation of the trust, the defendant stated that the pension trust had been established ‘ ‘ in order to provide greater security for those individuals entitled to pensions
*865 Here again, I believe, the answer is plain. The plaintiff was at no time informed of the precise terms of the agreement with the trust company — the employees were not parties to it, the defendant apparently did not think it important or desirable to advise its employees of its terms — the memorandum which it did give them of the pension trust (Sept., 1948, several years after it had been in effect) recited certain changes from the 1933 plan, but it did not disclose the change in the definition of “ annual salary”. The memorandum pointed out that while in the original welfare plan the pension was to be computed on the basis of “ 1% of the average annual salary received for the last three years of service, multiplied by the number of years’ service ”, under the pension trust the pension would be equal to “ 1% of the highest average annual salary # * * during any three consecutive calendar years of service ” (the plaintiff’s last three years of service were the years of the “ highest average annual salary”). And when the plaintiff entered into the “ Principal Agreement ” in 1951, he insisted upon the inclusion of a clause (it was included) in the paragraph rescinding any other agreements between the parties: “ but the provisions of this paragraph shall in no way affect any rights the party of the second part may have in the * * * Pension Fund and Welfare Plan ”. As for the pension trust of 1944, the plaintiff knew only that it had been established “ to provide greater security”, but not that the terms of the Welfare Plan of 1933 had been changed. The defendant in its brief recognizes that the proviso which the plaintiff insisted on 11 was with respect to plaintiff’s pension rights under the Welfare Plan ”. It is clear that the plaintiff was not renouncing his rights in the only plan he knew. The defendant may have had another plan in mind, but it failed to communicate it to him. In effect the plaintiff was entering into a contract with the defendant under which, he was to receive, not only his regular compensation, but in addition, if he remained until retirement age, a pension computed upon the only basis he was aware of.
The defendant’s argument assumes that the additional compensation payable on a percentage basis is a bonus or incentive compensation payment. But it is not a bonus, payable in the employer’s discretion, and it is not an incentive compensation paid in return for particular additional services, such as procuring additional professional opportunities for the defendant, or for “ extra ” work, or “ special work ”. Good faith is to be assumed and the plaintiff’s efforts were to be devoted to the affairs of his employers. He received the additional compensation for his devotion and loyalty — irrespective of what these *866 attributes produced economically. He and other employees benefited as of right from the profits of the firm, for their general services to the firm. The payments to be excluded in computing pension by the restrictive clause in the trust agreement were those for services rendered, either by way of bonus or by way of special compensation for special efforts.
The defendant’s testimony makes this plain. For many years there had been a “ bonus incentive arrangement ”, without reference to employment contract, under which at the end of each year a percentage of profits, in the discretion of the defendant, was allocated to the many offices (over the country) of the defendant. The distribution of this allocation of profits, this “ pool ” among employees of a given office, was entirely in the hands of the partner in charge of that office. The plaintiff’s manager’s agreement of 1942 did not mention this participation but he did in fact share in it, as did other, managers, until he became a “ Principal ” in 1951. Beginning in 1948, the form of the “ Manager’s ” agreement, after fixing the salary, stated “ in addition to the salary to be paid to the [manager], he will be entitled to participate in the bonus incentive arrangement applicable to the [appropriate office in a given city] ”. It was in this ‘ ‘ arrangement ’ ’ that the plaintiff shared, an arrangement that involved two contingencies, the allocation of percentage to an office and its distribution in the discretion of a partner. The exclusion of these payments from “annual salary” was as understandable as it was explicit. But this was changed by the ‘ ‘ Principal ’ ’ agreement of 1951. Under that the plaintiff no longer shared in the ‘ ‘ incentive arrangement ’ ’, but received a salary plus a percentage of profits, as a matter of contract, without reference to ‘ ‘ incentive ’ ’ or to discretion. He could receive nothing more and the language in the pension trust, excluding “ incentive payments ” can have no application to him, whether or not he was familiar with that language.
The defendant submits that as its employees did not make any contributions to the pension fund and that its own action was “voluntary”, pension payments are a “ gift ” and so subject to change, if not revocation. But I am sure defendant does not quite mean to take that position. It does not deny that the plaintiff is entitled to a pension, as of right — he continued in the defendant’s employ until retirement age and he has earned his pension (cf. Hurd v. Illinois Bell Tel. Co., 234 F. 2d 942, 946). Cases such as those they cite dealing with the power of an employer to change or revoke a ‘ ‘ voluntary ’ ’ pension program while “rights are inchoate ” are inapposite. The question is only upon what basis the pension is to be computed; and that *867 basis is determined by the agreement between plaintiff and defendant.
The trust arrangement the defendant made in 1944 was with the trust company; it may not have made full provision for the funding of pension payments for employees in the plaintiff's* status; but that fact should not prejudice the plaintiff. He is entitled to the larger pension computed on the basis of his total compensation, fixed salary plus percentage of profits, and the decree will so provide. It will also provide for the payment to the plaintiff of the sums due him, computed on that basis from July 1, 1960 to date, with interest.